# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **TERRI DOKES,** *individually and on* *behalf of all others similarly situated*, | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 1:18-CV-761-VEH** |
| **LTD FINANCIAL SERVICES, L.P.,** **et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

---

## <u>MEMORANDUM OPINION</u>

This is a civil action filed by Plaintiff Terri Dokes, individually and on
behalf of all others similarly situated, against Defendants LTD Financial Services,
L.P., ("LTD") and JH Portfolio Debt Equities, LLC ("JH Portfolio"). (*See* doc. 1).
The Complaint (doc. 1) sets out one count for violation of Section 1692g(a)(2) of
the Fair Debt Collection Practices Act (the "FDCPA") for failure to clearly
disclose "the name of the creditor to whom the debt is owed." (*Id.* at 4-5) (quoting
15 U.S.C. § 1692g(a)(2)). This count arises out of Defendants' attempt to collect
an alleged debt from Plaintiff through a debt collection letter. (*Id.* at 1-3).

Before the Court is Defendants' joint Motion To Dismiss (the "Motion") the
Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief may be granted. (Doc. 14). Defendants filed their Motion

on July 5, 2018, and Plaintiff filed her opposition (doc. 19) to the Motion on

August 9, 2018.[1] Thus, the Motion is ripe for review. For the reasons stated in this

opinion, the Motion is due to be **GRANTED**.

## I. STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the

complaint. *See* FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following

defenses by motion:  (6) failure to state a claim upon which relief can be

granted[.]"). "[W]hen ruling on a motion to dismiss, a court must view the

complaint in the light most favorable to the plaintiff . . . ." *Am. United Life Ins. Co.

v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp., Inc.

v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). This requires that a

court "accept all of the plaintiff's well-pleaded <u>facts</u> [and reasonable inferences

drawn from those facts] as true." *Id*. (emphasis added) (citing *St. Joseph's Hosp.,

Inc.*, 795 F.2d at 954). Mere conclusory statements and legal conclusions,

---

[1]  Defendants filed a reply brief (doc. 20) on August 23, 2018, in support of their Motion. However, Defendants' reply brief was not considered because it was filed late. Paragraph B of Appendix III of the Court's Uniform Initial Order (doc. 6), which applies "to <u>all</u> motions (except motions for summary judgment)" (*id.* at 22 n.7), states that "[t]he movant's reply brief shall be filed no later than seven (7) **calender** days after the date on which the opponent's responsive brief was due." (*Id.* at 22). Because Plaintiff's responsive brief was due on August 9, 2018, Defendants' reply brief was due on August 16, 2018. Defendants filed their reply brief a week after this deadline without being granted or even requesting an extension of time.

however, do not need to be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Similarly, even

though a court "must take all of the factual allegations in the complaint as true, [a

court] '[is] not bound to accept as true a legal conclusion couched as a factual

allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks

omitted)).

Thus, "a court considering a motion to dismiss can . . . begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Id.* at 679. After separating out these legal conclusions, a

court can identify if there are any well-pleaded factual allegations. *See id.* "When

there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether [the complaint survives the motion to dismiss]." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement,'" the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 (stating that the "[f]actual allegations must be enough to raise a right to relief above the speculative level"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).

## II. BACKGROUND

At issue in this case is a debt collection letter (the "Letter") that is attached to Plaintiff's Complaint as Exhibit B. (Doc. 1-2). The Letter was sent by LTD to Plaintiff. (*See id.* at 1). The right side of the Letter's heading contains LTD's name and contact information and the date. (*See id.*) The left side of the Letter's heading contains Plaintiff's name and address and two boxes. (*See id.*) The bottom box contains an LTD reference number and the amount of the debt. (*See id.*) The top box contains the following information:

CURRENT CREDITOR:

4

JH PORTFOLIO DEBT EQUITIES, LLC.
ORIGINAL CREDITOR:
COMENITY BANK
CREDITOR ACCOUNT #:
[redacted in Complaint]

(*See id.*) The body of the Letter contains the following text:

Dear Terri E Dokes,

Your account with the above named creditor has been placed with
LTD Financial Services, L.P., a debt collector. This is an attempt to
collect a debt and any information obtained will be used for that
purpose.

Unless you notify this office within 30 days after receiving this notice
that you dispute the validity of the debt or any portion thereof, this
office will assume this debt is valid. If you notify this office in
writing within 30 days after receiving this notice that you dispute the
validity of this debt or any portion thereof, this office will obtain
verification of the debt or obtain a copy of a judgment, if any, and
mail you a copy of such verification or judgment. If you request this
office in writing within 30 days after receiving this notice, this office
will provide you with the name and address of the original creditor, if
different from the current creditor.

You may call this office to discuss this debt at 1-800-741-2100, ask
for [name]. Please refer to the reference number above.

*(See id.)* (emphasis added).

Plaintiff's Complaint contains the following well-pleaded factual

allegations:

8.    Ms. Dokes fell behind on paying her bills, including a debt she
allegedly owed for a Comenity Bank account. Defendant LTD sent

Ms. Dokes an initial form collection letter, dated December 8, 2017, demanding payment of this debt. This collection letter stated:

> CURRENT CREDITOR:
> JH PORTFOLIO DEBT EQUITIES, LLC
> ORIGINAL CREDITOR:
> COMENITY BANK

The letter then stated that "Your account with the above named creditor has been placed with LTD Financial Services, L.P., a debt collector." . . .

9.    Defendants' letter failed to explain what, if any, the difference was between the "current" and "original" creditor, which "above named creditor" it was representing, or whether it was representing both.

10.    Ms. Dokes is informed through counsel that JH Portfolio likely bought the debt at issue after default and that LTD was representing only JH Portfolio. . . .

. . .

13.    Defendants' collection actions complained of herein occurred within one year of the date of this Complaint.

(*See* doc. 1 at 3-4, ¶¶ 8-10, 13). Plaintiff then alleges that Defendants violated Section 1692g(a)(2) of the FDCPA because "Defendants' form collection letter . . . failed to effectively identify the current creditor to whom the debt was owed." (*Id.* at 4, ¶ 16) (citations omitted).

## III.    AN OVERVIEW OF SECTION 1692g(a)(2) OF THE FDCPA

Section 1692g(a)(2) of the FDCPA requires that in its "initial

communication with a consumer in connection with the collection of any debt" or within five days of such initial communication, "a debt collector shall . . . send the consumer a written notice containing-- (2) the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2) (emphasis added). However, "there is no requirement in the FDCPA that a debt collector quote the statute's language verbatim." *Orr v. Westport Recovery Corp.*, 941 F. Supp. 2d 1377, 1382 (N.D. Ga. 2013) (citing *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989)). Instead, "[t]o satisfy [Section] 1692g(a), the debt collector's notice must state the required information clearly enough that the recipient is likely to understand it." *Leonard v. Zwicker & Assocs., P.C.*, 713 F. App'x 879, 882 (11th Cir. 2017) (quoting *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) ("It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed.")). When deciding "whether the collection letter [complies with or] violates [Section] 1692g," the letter must be analyzed "as a whole." *Orr*, 941 F. Supp. 2d at 1382 (quoting *Farley v. Diversified Collection Servs., Inc.*, No. 98-2108, 1999 WL 965496, at *3 (N.D. Ill. Sept. 30, 1999)).

For claims under Section 1692g, "the Eleventh Circuit has not definitively ruled on the standard" that should be used. *Lait v. Med. Data Sys., Inc.*, No. 17-

378, 2018 U.S. Dist. LEXIS 72908, at *7 (M.D. Ala. Apr. 26, 2018), *appeal docketed*, No. 18-12255 (11th Cir. May 25, 2018). In *Leonard*, the Eleventh Circuit acknowledged that it has applied the least-sophisticated-consumer standard to claims under other sections of the FDCPA and stated that it saw "no reason to disagree with" the other circuits that have also applied the least-sophisticated-consumer standard to claims under Section 1692g. *Leonard*, 713 F. App'x at 882 n.2. However, the Eleventh Circuit did "not decide the issue" of whether the least-sophisticated-consumer standard applies to claims under Section 1692g because "both parties [in *Leonard*] assume[d] that the standard applies to [Section] 1692g," and the Eleventh Circuit "[made] that assumption as well." *Id.* Similarly, this Court "need not and [does] not decide" in this case whether the least-sophisticated-consumer standard applies to claims under Section 1692g. *See id.* Just like the situation in *Leonard*, here both parties assume that the least-sophisticated-consumer standard applies to claims under Section 1692g (*see* doc. 14 at 5; doc. 19 at 6), and the Court will "make that assumption as well." *See Leonard*, 713 F. App'x at 882 n.2.

Under the least-sophisticated-consumer standard, "[t]he inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the 'least sophisticated consumer' would have been deceived'

by the debt collector's conduct." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 n.11 (11th Cir. 1985)). "The 'least-sophisticated consumer' standard takes into account that consumer-protection laws [like the FDCPA] are 'not made for the protection of experts, but for the public . . . .'" *Id.* at 1258-59 (quoting *Jeter*, 760 F.2d at 1172-73 (internal quotation marks omitted)). However, "'[t]he least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). Furthermore, "the test has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" *Id.* (alteration in original) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)). Thus, "[t]o satisfy [Section] 1692g(a), the debt collector's notice . . . . should be clear enough that a naive consumer [who 'possess[es] a rudimentary amount of information about the world,' is 'willing[] to read a collection notice with some care,' *id.* (quoting *Clomon*, 988 F.2d at 1319), and does not interpret the notice 'bizarre[ly] or idiosyncratic[ally],' *id.* (quoting

*Nat'l Fin. Servs., Inc.*, 98 F.3d at 136),] comes away from the notice understanding the 'identify of the creditor.'" *Leonard*, 713 F. App'x at 882-83 (citing *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012)).[2]

---

[2] Plaintiff repeatedly argues in her opposition to the Motion that Defendants incorrectly "assert . . . that the FDCPA merely requires that a form debt collection letter 'contain' the name of the creditor to whom the debt is owed" when the correct standard is actually that the name of the creditor to whom the debt is owed must be clearly stated under the least-sophisticated-consumer standard. (Doc. 19 at 2) (quoting doc. 14 at 7) (*see also* doc. 19 at 4, 6-9). First, the Court notes that it will analyze whether the Letter clearly stated the name of the creditor to whom the debt is owed under the least-sophisticated-consumer standard, just like both parties argue that the Court should do. Second, however, the Court also notes that Plaintiff's statements misstate Defendants' assertions about what the FDCPA requires. Despite Plaintiff's assertions to the contrary, Defendants do indeed state that the name of the creditor to whom the debt is owed must be clearly stated (*see* doc. 14 at 7) and that the least-sophisticated-consumer standard should be applied. (*See id.* at 5).

Further, Plaintiff argues that Defendants' reliance on *Leonard*, 713 F. App'x 879, and *Lait*, 2018 U.S. Dist LEXIS 72908, which Defendants cite when discussing the least-sophisticated-consumer standard for claims under Section 1692g, is misplaced because these cases are "factually distinguishable" and thus "are not helpful here." (Doc. 19 at 8 n.2). Because the Court also cites *Leonard* and *Lait* when discussing the least-sophisticated-consumer standard, the Court will address Plaintiff's argument.

Despite Plaintiff's argument to the contrary, the Court's (and Defendants') citations to *Leonard* and *Lait* when discussing the least-sophisticated-consumer standard are not misplaced. It is basic knowledge in the law that cases, even if the facts are slightly distinguishable, can still correctly state the law and be cited as authority.

Additionally, Plaintiff not only herself cites *Leonard* when discussing the least-sophisticated-consumer standard, but she also implies that Defendants did not but should have cited *Leonard*. (*See id.* at 2) ("Defendants assert that their letter was clear, and that the FDCPA merely requires that a form debt collection letter 'contain' the name of the creditor to whom the debt is owed. (Dkt. 14 at p. 7). However, as multiple appellate courts have held, including the Eleventh Circuit Court of Appeals, '[t]o satisfy § 1692g(a), the debt collector's notice must state the required information clearly enough that the recipient is likely to understand it', see, Leonard v. Zwicker & Assocs., 713 F. App'x 879, 882-83 (11th Cir. 2017), quoting, Janetos v. Fulton Friedman & Gullace, 825 F.3d 317, 321 (7th Cir. 2016)." (alteration in original)). Thus, in one section of her opposition to the Motion, Plaintiff incorrectly implies that Defendants failed to cite *Leonard*, while in another section of her opposition, Plaintiff states that Defendants are

"Generally, the question of whether the least sophisticated consumer would be confused or misled by a debt collector's communication is one for the jury." *Id.* at 882 (citing *Milijkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 n.11 (11th Cir. 2015)). "However, the question of whether a plaintiff has alleged sufficient facts to state a claim under [Section] 1692g is a legal question for the court." *Id.* (citing *Milijkovic*, 791 F.3d at 1307 n.11).

## IV.   ANALYSIS

The Motion requires the Court to address one main issue: whether the Letter clearly stated "the name of the creditor to whom the debt is owed" in light of the least-sophisticated-consumer standard. 15 U.S.C. § 1692g(a)(2); *see also Leonard*, 713 F. App'x at 882-83. Defendants argue that the Letter clearly stated the name of the creditor to whom the debt was owed under the least-sophisticated-consumer standard because the Letter clearly identified JH Portfolio as the current creditor and Defendants were not required to explain the difference between the original creditor and the current creditor or to make any other explanations. (Doc. 14 at 6-

mistakenly relying on *Leonard*.

Additionally, Plaintiff's argument regarding Defendants' (and thus the Court's) reliance on *Lait* also fails. The Court and Defendants correctly cite *Lait* to acknowledge that "[t]he Eleventh Circuit has not definitively held that the least sophisticated consumer standard applies to claims made under 15 U.S.C. § 1692g." (*See* doc. 14 at 5) (citing *Lait*, 2018 U.S. Dist. LEXIS 72908, at *7). This is a statement of law that Plaintiff omitted from her opposition. Thus, instead of incorrectly relying on *Lait*, the Court and Defendants correctly cite *Lait* for this proposition.

7). The Court agrees with Defendants that the Letter clearly stated the name of the creditor to whom the debt was owed under the least-sophisticated-consumer standard and thus complies with Section 1692g(a)(2).

Because neither the Court nor the parties have identified a case that is exactly on point, the Court will first analyze the Letter from the perspective of the least sophisticated consumer. Then, the Court will analyze the case law to determine if the Letter is more similar to debt collection letters that have been found to comply with Section 1692g(a)(2) or more similar to debt collection letters that have been found not to comply with Section 1692g(a)(2).

### A. The Letter Clearly Conveys the Name of the Creditor to Whom the Debt Is Owed Under the Least-Sophisticated-Consumer Standard Because It Explicitly Identifies JH Portfolio as the "Current Creditor" and Nothing in the Letter Obscures This Clear Identification

The Court will begin its analysis of the Letter just as the least sophisticated consumer would—with "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon*, 988 F.2d at 1319). In other words, the Court will interpret the Letter in a "reasonable[]" manner and not in a "bizarre or idiosyncratic manner." *Id.* (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136). Interpreting the Letter as the least sophisticated consumer would, the Court finds that the Letter

clearly conveys "the name of the creditor to whom the debt is owed," 15 U.S.C. §

1692g(a)(2), under the least-sophisticated-consumer standard.

In the Letter, only three entities are mentioned, with each entity's role being

clearly identified: (1) JH Portfolio, which is identified as the current creditor; (2)

Comenity Bank, which is identified as the original creditor; and (3) LTD, which is

identified as a debt collector. (Doc. 1-2 at 1). From these identifications, only "a

rudimentary amount of information about the world and a willingness to read a

collection notice with some care," *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon*,

988 F.2d at 1319), is needed to determine that JH Portfolio is the creditor to whom

the debt is owed. The least sophisticated consumer can start by easily eliminating

LTD as a possibility since LTD is explicitly identified as a "debt collector" and

not as a creditor. (*See* doc. 1-2 at 1). This leaves the least sophisticated consumer

with two options from which to decide the identity of the creditor to whom the

debt is owed: (1) the current creditor, JH Portfolio, and (2) the original creditor,

Comenity Bank.

From these two options, the least sophisticated consumer should be able to

determine that JH Portfolio, the current creditor, is the creditor to whom the debt is

owed for at least three reasons. First, the least sophisticated consumer should be

able to understand (and know the difference between) the words "current" and

"original" because these words "are plain-English words, not specialized terms that could confuse the ordinary debtor." *Zuniga v. Asset Recovery Sols.*, No. 17-5119, 2018 U.S. Dist. LEXIS 51063, at *9 (N.D. Ill. Mar. 28, 2018). As the district court in *Zuniga* stated, "[i]t is unlikely that a significant fraction of even the most unsophisticated consumers, possessing 'reasonable intelligence,' would fail to understand the difference between 'original' and 'current,' or fail to understand that the 'current' creditor is the creditor to whom the debt is currently owed." *Id.* (citation omitted).[3]

---

[3] While the *Zuniga* court applied the Seventh Circuit's unsophisticated-consumer standard instead of the least-sophisticated-consumer standard, the *Zuniga* court's conclusion also holds true under the least-sophisticated-consumer standard. This is because the unsophisticated-consumer standard and the least-sophisticated-consumer standard are essentially the same standard, just different nomenclature. As the Seventh Circuit explained in *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994), it "agree[d] with much of the analysis set forth by the Second Circuit in *Clomon*" regarding the least-sophisticated-consumer standard, which included the statement that "the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1257 (quoting *Clomon*, 988 F.2d at 1319). The Seventh Circuit, however, wanted to "use the term, 'unsophisticated,' instead of the phrase, 'least sophisticated,'" because it wanted to "relieve the incongruity between what the standard would entail if read literally [that it protects the least sophisticated consumer], and the way courts[, including the Eleventh Circuit,] have interpreted the standard [that it includes an 'element of reasonableness']." *Id.* More specifically, the Seventh Circuit believed that using the term "least sophisticated consumer" to describe a standard in which the consumer was "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care," *id.* (quoting *Clomon*, 988 F.2d at 1319), was incongruous because the literal least sophisticated consumer "is the single most unsophisticated consumer who exists" and "would likely not be able to read a collection notice with care (or at all), let alone interpret it in a reasonable fashion." *Id.* Thus, according to the Seventh Circuit, the term "unsophisticated consumer" was more appropriate. *See id.*

Furthermore, although some courts, including the Seventh Circuit in a later opinion,

either state or imply that the unsophisticated-consumer standard and the least-sophisticated-consumer standard are different standards, these courts differentiate the standards by saying that the least-sophisticated-consumer standard, unlike the unsophisticated-consumer standard, is tied to "the very last rung on the sophistication ladder." *See, e.g., Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) ("[W]e have rejected the 'least sophisticated debtor' standard used by some other circuits because we don't believe that the unsophisticated debtor standard should be tied to 'the very last rung on the sophistication ladder.'" (quoting *Gammon*, 27 F.3d at 1257)); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) ("The Seventh Circuit has adopted an 'unsophisticated consumer' standard that serves the same purposes and apparently would lead to the same results [as the least-sophisticated-consumer standard] in most cases, except that [the unsophisticated-consumer standard] is designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" (quoting *Gammon*, 27 F.3d at 1257)); *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14-739, 2015 WL 4637952, at *3 (N.D. Ill. Aug. 4, 2015) ("The unsophisticated consumer test differs from the *least* sophisticated consumer test that other circuits use. Unlike the least sophisticated consumer, the unsophisticated consumer is not 'tied to 'the very last rung on the sophistication ladder.''" (footnote and citation omitted) (quoting *Pettit*, 211 F.3d at 1060)). This apparent difference, however, is not true: the least-sophisticated-consumer standard itself is not tied to "the very last rung on the sophistication ladder." In fact, this was the Seventh Circuit's central message in *Gammon*: the Seventh Circuit wanted to "use the term, 'unsophisticated,' instead of the phrase, 'least sophisticated,' to describe" the standard because it noted that the least-sophisticated-consumer standard included an "element of reasonableness" and thus did not actually involve analyzing a debt collection letter from the viewpoint of the <u>literal</u> least sophisticated consumer. *See Gammon*, 27 F.3d at 1257. Moreover, when analyzing the cases that have stated or implied that the least-sophisticated-consumer standard and unsophisticated-consumer standard are different, it becomes apparent that the two standards are essentially the same. First, the district court in *Marquez* states that "[t]he unsophisticated consumer test differs from the *least* sophisticated consumer test that other circuits use," and cites *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010), as an example of a different circuit using the least-sophisticated-consumer standard. *Marquez*, 2015 WL 4637952, at *3 & n.3. The *Marquez* court then explains that "[u]nlike the least sophisticated consumer, the unsophisticated consumer is not 'tied to 'the very last rung on the sophistication ladder,''" *id.* at 3 (quoting *Pettit*, 211 F.3d at 1060), but "[i]nstead[] . . . is reasonable." *Id.* (citing *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). However, as the Eleventh Circuit notes in *LeBlanc*, the least-sophisticated-consumer standard also has an objective reasonableness component: "the test has an <u>objective</u> component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of <u>reasonableness</u>.'" *LeBlanc*, 601 F.3d at 1194 (alteration in original) (emphases added) (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136). Thus, despite the *Marquez* court's statement to the contrary, the least-sophisticated-consumer standard, just like the unsophisticated-consumer standard, does have a reasonable component and is not tied to "the very last rung on the

sophistication ladder." Second, in *Pettit*, after the Seventh Circuit stated that it has "rejected the 'least sophisticated debtor' standard used by some other circuits because [it] [doesn't] believe that the unsophisticated debtor standard should be tied to 'the very last rung on the sophistication ladder,'" *Pettit*, 211 F.3d at 1060 (quoting *Gammon*, 27 F.3d at 1257), the Seventh Circuit goes on to describe its unsophisticated consumer:

> Instead, we and other courts have held that our uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 408–09 (4th Cir.1999); *United States v. National Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir.1996); *Gammon*, 27 F.3d at 1257; *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993). Furthermore, while our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion.

*Id.* Despite its assertion that it has rejected the least-sophisticated-consumer standard, the Seventh Circuit's description of its unsophisticated consumer is very similar to the Eleventh Circuit's description of the least sophisticated consumer. Just as the Seventh Circuit's unsophisticated consumer "possesses rudimentary knowledge about the financial world" and "is wise enough to read collection notices with added care," *id.*, the Eleventh Circuit's least sophisticated consumer "can be presumed to posses a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon*, 988 F.2d at 1319). Furthermore, just as the Seventh Circuits's unsophisticated consumer "does not interpret [debt collection letters] in a bizarre or idiosyncratic fashion," *Pettit*, 211 F.3d at 1060, the Eleventh Circuit's least sophisticated consumer does not interpret debt collection letters bizarrely or idiosyncratically. *See LeBlanc*, 601 F.3d at 1194 ("[The least-sophisticated-consumer standard] has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'" (second alteration in original) (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136)). This extreme similarity between the unsophisticated consumer and the least sophisticated consumer is not surprising; despite stating that it has rejected the least-sophisticated-consumer standard, the Seventh Circuit, when describing its unsophisticated consumer, cites three cases that use the least-sophisticated-consumer standard, two of which the Eleventh Circuit also cites when describing its least sophisticated consumer. *See Chaudhry*, 174 F.3d at 408-09 (discussing the "least sophisticated debtor" standard); *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136 (discussing the "least sophisticated consumer" standard); *Clomon*, 988 F.2d at 1319 (discussing the "least-sophisticated-consumer standard").

Thus, given these similarities, it seems that the primary difference between the unsophisticated-consumer standard and the least-sophisticated-consumer standard is that the

This Court agrees with the *Zuniga* court's reasoning and conclusion and notes that

the least sophisticated consumer should know that "current" means "now" and

thus the current creditor is the creditor to whom the debt is owed now (at the

moment the Letter was sent), while "original" means "initial" and thus the original

creditor is the creditor to whom the debt was initially but is no longer owed.

Second, Congress itself appears to have drafted Section 1692g(a) with the

assumption that consumers should know the difference between "current" and

---

unsophisticated-consumer standard, unlike the least-sophisticated-consumer standard, explicitly states that "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060 (citing *Gammon*, 27 F.3d at 1260 (Easterbrook, J., concurring)). However, this requirement that a significant fraction of the population be misled is entirely consistent with the least-sophisticated-consumer standard. Judge Easterbrook's reasoning for this requirement was based on the notion that the least sophisticated consumer would believe almost anything. *See Gammon*, 27 F.3d at 1259 (Easterbrook, J., concurring) ("The 'least sophisticated consumers' actually *believe* that 12 Senators are from other planets." (footnote omitted)). Judge Easterbrook thus reasoned that "if showing a handful of misled debtors [instead of showing a signification fraction of the population] were enough, [the Seventh Circuit] would as a practical matter be using the 'least sophisticated consumer' doctrine." *Id.* at 1260. However, while it is true that the <u>literal</u> least sophisticated consumer may believe almost anything, the least-sophisticated-consumer standard, as stated above, has a reasonableness component and does not look to the literal least sophisticated consumer. *See LeBlanc*, 601 F.3d at 1194. Thus, just like for the unsophisticated-consumer standard, meeting the least-sophisticated-consumer standard likely would mean that a signification fraction of consumers would be confused.

Overall, even if the unsophisticated-consumer standard and the least-sophisticated-consumer standard are not identical, they are extremely similar. Because the *Zuniga* court found that the Seventh Circuit's unsophisticated consumer would not be confused by the "plain-English words" "original" and "current," *Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9, the Court, based on *Zuniga* and its own due consideration, finds that the Eleventh Circuit's least sophisticated consumer would also not be confused by the words "original" and "current." Furthermore, when discussing the case law, the Court will treat cases that use the unsophisticated-consumer standard as persuasive without repeating its comparison of the unsophisticated-consumer standard and the least-sophisticated-consumer standard.

"original." Section 1692g(a)(5) requires that the collection notice contain "a

statement that, upon the consumer's written request within the thirty-day period,

the debt collector will provide the consumer with the name and address of the

original creditor, if different from the current creditor." 15 U.S.C. § 1692g(a)(5)

(emphases added). If consumers were not expected to understand the terms

"current" and "original" and know the difference between them, then Section

1692g(a)(5)'s requirement would be futile in serving the FDCPA's goal of

"protect[ing] consumers against debt collection abuses," *see* 15 U.S.C. § 1692(e),

since consumers would not understand the very information that Section

1692g(a)(5) requires. Third, as Defendants point out, Section 1692g(a)(5)'s use of

the term "current creditor" as a synonym for "creditor to whom the debt is owed"

shows that the two phrases are interchangeable and that the phrase "current

creditor" should easily be understood as meaning "the creditor to whom the debt is

owed."[4] (*See* doc. 14 at 8) (*see also Zuniga*, 2018 U.S. Dist. LEXIS 51063, at \*9)

(supporting its conclusion that an unsophisticated consumer would "understand

---

[4] In fact, many courts use the two phrases interchangeably. *See, e.g.*, *Janetos*, 825 F.3d at 319 ("Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor . . . ." (emphasis added)). Even Plaintiff uses these phrases interchangeably. (*See* doc. 19 at 15) ("The validation notice here does not identify the current creditor clearly and effectively. Defendants violated § 1692g (a)(2) of the FDCPA because their initial form collection letter failed to state the name of the creditor to whom the debt was owed, [sic] clearly enough that the recipients were likely to understand it." (emphases added)).

that the 'current' creditor is the creditor to whom the debt is currently owed" with the fact that "the FDCPA *itself* uses the phrase 'current creditor' as a synonym for the 'creditor to whom the debt is owed' in another part of the very same statutory provision").

Finally, because the Letter must be analyzed "as a whole," *Orr*, 941 F. Supp. 2d at 1382 (quoting *Farley*, 1999 WL 965496, at *3), nothing in the rest of the Letter should confuse the least sophisticated consumer regarding JH Portfolio's being the creditor to whom the debt is owed. Plaintiff, however, argues that the Letter was "materially confusing" (doc. 19 at 2) because its first sentence—"Your account with the <u>above named creditor</u> has been placed with LTD Financial Services, L.P., a debt collector" (doc. 1-2 at 1) (emphasis added)—"state[s] that [Plaintiff's] debt has been placed with [LTD] for collection[] by 'the above named creditor', but fail[s] to describe <u>which</u> of the two creditors it was referring to." (Doc. 19 at 3) (*see also id.* at 11). The Letter's first sentence, however, should not be confusing to the least sophisticated consumer who has "a willingness to read a collection notice with some care." *See LeBlanc*, 601 F.3d at 1194 (quoting *Clomon*, 988 F.2d at 1319). Despite Plaintiff's assertion that the Letter's first sentence states that "<u>the debt 'has been placed</u>' with LTD for collection <u>by the above-named creditor</u>" (doc. 19 at 11) (emphases added) (*see*

*also id.* at 3), the Letter's first sentence actually states something quite different and makes no explicit reference as to who placed the debt with LTD. Instead, the reference to the "above named creditor" is merely a phrase that is describing which of Plaintiff's accounts has been placed with LTD for collection: "[y]our account with the above named creditor." (*See* doc. 1-2 at 1). After reading this sentence, the least sophisticated consumer should be able to look back up at the heading of the Letter and, based on her understanding of the words "current" and "original," *see Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9, easily determine that the account at issue is her account that was initially with Comenity Bank, the original creditor, but that is now with JH Portfolio, the current creditor.

Plaintiff, however, refutes the notion that the least sophisticated consumer's understanding of the words "original" and "current" should allow her to understand that LTD "was collecting the debt on behalf of the current creditor." (Doc. 19 at 12) (citing doc. 14 at 12). Plaintiff cites *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773 (S.D. Ind. 2016), which Plaintiff asserts "is factually most similar to [the Letter,]" for the proposition that when a "collection letter involv[es] an original creditor, debt-buyer, and collector, 'a significant fraction of the population could question whether the current creditor is [the debt buyer], [the collector], or [the original creditor] without requiring a bizarre,

20

peculiar, or idiosyncratic interpretation.'" (Doc. 19 at 12) (last three alterations in

original) (citing *Long*, 223 F. Supp. 3d at 778-79 (citations omitted)). *Long*,

however, is easily distinguishable. The letters in *Long* stated, "Please be advised

that Fenton & McGarvey Law Firm, P.S.C. has been retained by Jefferson Capital

Systems, LLC to collect its account with you," and "declared that the 'original

creditor' for the debts was Comenity Bank." *Long*, 223 F. Supp. 3d at 775. "The

body of the [letters in *Long*] made no other references to Jefferson Capital,

Comenity Bank, or Fenton & McGarvey." *Id.* It was based on these facts that the

*Long* court concluded that "[b]ased upon the text of the [l]etters, <u>without more</u>, a

significant fraction of the population could question whether the current creditor is

Jefferson Capital, Fenton & McGarvey, or Comenity Bank without requiring a

'bizarre, peculiar, or idiosyncratic interpretation.'" *Id.* at 779 (emphasis added)

(citing *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006)).

There are three main differences between the letters in *Long* and the Letter here,

and these three differences provide the something "more" that the *Long* court

found missing. First, unlike the letters in *Long*, which never identified Jefferson

Capital Systems, LLC, as a creditor, much less the current creditor, the Letter

clearly identifies JH Portoflio as the current creditor. *Compare id.* at 775, *with*

doc. 1-2 at 1. Second, unlike the letters in *Long*, which identified only one

entity—Comenity Bank—as a creditor and thus possibly gave the impression that Comenity Bank could still be the current creditor, the Letter identifies JH Portfolio as the current creditor in addition to identifying Comenity Bank as the original creditor. *Compare Long*, 223 F. Supp. 3d at 775, *with* doc. 1-2 at 1. Third, unlike the letters in *Long*, which never explicitly identified Fenton & McGarvey as a debt collector, the Letter explicitly identifies LTD as a debt collector. *Compare Long*, 223 F. Supp. 3d at 775, *with* doc. 1-2 at 1. Thus, unlike in *Long*, based on the text of the Letter, "a significant fraction of the population could [not] question whether the <u>current creditor</u> is [JH Portfolio], [LTD], or Comenity Bank." *See Long*, 223 F. Supp. 3d at 779 (emphasis added). Instead, the least sophisticated consumer should clearly be able to understand that the current creditor is exactly who the Letter says it is: JH Portfolio.[5]

---

[5] In addition to arguing that the Letter's first sentence makes the Letter confusing, Plaintiff appears to also argue that the Letter is confusing because Plaintiff "had never done business" with JH Portoflio and thus JH Portfolio "was a stranger" to Plaintiff. (*See* doc. 19 at 2-3, 3 n.1) (*see also id.* at 11). Plaintiff's not being "familiar with" JH Portoflio (*id.* at 3), however, has no bearing on whether the Letter clearly conveyed that JH Portfolio was the current creditor and thus the creditor to whom the debt was owed. It is possible for a consumer to be unfamiliar with an entity yet still understand that entity's role, especially where the entity's role is clearly identified.

Furthermore, because the Court finds that the Letter clearly conveys the name of the creditor to whom the debt was owed and is not made confusing by its first sentence or by Plaintiff's unfamiliarity with JH Portfolio, the Court rejects Plaintiff's argument that the Letter, to be clear, required additional information such as "[a] simple statement that LTD represented JH Portfolio or that JH Portfolio had bought the debt." (*See id.* at 11 n.3) (quoting doc. 1 at 3, ¶ 11).

Thus, upon analyzing the Letter, the Court finds that the least sophisticated

consumer, with her "rudimentary amount of information about the world" and

"willingness to read a collection notice with some care," *LeBlanc*, 601 F.3d at

1194 (quoting *Clomon*, 988 F.2d at 1319), should easily be able to determine that

JH Portfolio is the creditor to whom the debt was owed. The least sophisticated

consumer can easily eliminate the debt collector, LTD, as a possibility and then

can easily distinguish between the two identified creditors, JH Portfolio and

Comenity Bank. Because JH Portfolio is identified as the "current creditor" and

Comenity Bank is identified as the "original creditor" (*see* doc. 1-2 at 1), it is easy

to determine, based on the meaning of these "plain-English words," *Zuniga*, 2018

U.S. Dist. LEXIS 51063, at *9, that the debt was owed to the current creditor, JH

Portfolio, and nothing in the rest of the Letter obscures this clear identification of

JH Portfolio as the creditor to whom the debt was owed.

> **B.     The Letter Is More Similar to Letters that Have Been Found To
> Comply with Section 1692g(a)(2) than Letters that Have Been
> Found Not To Comply with Section 1692g(a)(2) Because the
> Letter Explicitly Identifies the "Current Creditor" and Does Not
> Identify a Non-Creditor Client**

While the Court has found no cases analyzing debt collection letters

identical to the Letter, the case law shows that debt collection letters that explicitly

identify the current creditor with the words "current creditor" are found to comply

with Section 1692g(a)(2) unless other information in the letter, namely the identification of a different entity that is the debt collector's client, creates confusion as to whether the current creditor is the creditor to whom the debt is owed. *Compare Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9-10 (concluding that the Section 1692g(a)(2) claim should be dismissed when "the letter plainly identified the entity to whom the debt was owed by using the words 'Current Creditor'" because unsophisticated consumers should be able to understand the word "current" and because "there [were] no confusingly named non-creditors sprinkled about the letter to muddy the waters, and no opaque technical terms"), *and Suellen v. Mercantile Adjustment Bureau, LLC*, No. 12-916, 2012 U.S. Dist. LEXIS 98640, at *16-17 (N.D. Cal. June 12, 2012) (concluding that the Section 1692g(a)(2) claim should be dismissed when the "letter clearly name[d] EAF as the 'current creditor' of the account" because "such a clear <u>heading</u> identifying the current creditor at the top of the letter <u>sufficiently</u> notifies the consumer to whom the account is owed and satisfies the requirements in the FDCPA" (emphases added) (citing *Stricklin v. First Nat'l Collection Bureau, Inc.*, No. 10-1027, 2012 WL 1076679, at *10 (S.D. Ill. Mar. 30, 2012); *Quicho v. Mann Bracken, LLC*, No.

07-3478, 2007 WL 2782971, at *1 (N.D. Cal. Sept. 25, 2007))),[6] *with Pardo v.*

*Allied Interstate, LLC*, No. 14-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (SD.

Ind. Sept. 21, 2015) (concluding that the Section 1692g(a)(2) claim survived a

motion to dismiss even though the letter explicitly identified the "Current

Creditor" because the letter also identified a different entity "as the 'Client'" who

was "willing to accept payment" and did not explain the relationship between the

"Current Creditor" and the "Client"), *and Deschaine v. Nat'l Enter. Sys.*, No. 12-

50416, 2013 U.S. Dist. LEXIS 31349, at *4-5 (N.D. Ill. Mar. 7, 2013) (concluding

that the Section 1692g(a)(2) claim survived a motion to dismiss even though the

letter explicitly identified the "Current Creditor" because "[n]aming an entity as

'Client' and a different entity as 'Current Creditor' especially where the 'Client' is

<hr />

[6] Plaintiff attempts to distinguish *Suellen* by arguing that "the letter at issue in <u>Suellen</u>
stated on its face that it was collecting on behalf of the debt buyer" while the Letter does not state
on its face that it is collecting on behalf of JH Portfolio. (Doc. 19 at 11) (citing *Suellen*, 2012
U.S. Dist. LEXIS 98640, at *10). Plaintiff's statement is true. Furthermore, although Plaintiff
does not explicitly point this out, it is also true that "the body of the letter [in *Suellen*] state[d]
that the account [was] owed to EAF," but the Letter does not explicitly state "that the account
[was] owed to [JH Portoflio]." *Suellen*, 2012 U.S. Dist. LEXIS 98640, at *16. These two
differences, however, do not distinguish *Suellen* because these facts were not necessary to the
*Suellen* court's finding that the letter clearly identified the creditor to whom the debt was owed.
The *Suellen* court found that it was sufficient that the "letter clearly name[d] EAF as the 'current
creditor' of the account" in its heading, which is exactly what the Letter does: the Letter "clearly
names [JH Portfolio] as the 'current creditor' of the account." *See id.* ("Here, Mercantile's letter
clearly names EAF as the 'current creditor' of the account . . . . [S]uch a clear <u>heading</u> identifying
the current creditor at the top of the letter <u>sufficiently</u> notifies the consumer to whom the account
is owed and satisfies the requirements in the FDCPA." (emphases added) (citing *Stricklin*, 2012
WL 1076679, at *10; *Quicho*, 2007 WL 2782971, at *1)).

named more often than the 'Current Creditor' plausibly could create confusion" regarding the identity of the creditor to whom the debt is owed). The Letter is much more similar to the letters that have been found to clearly state the name of the creditor to whom the debt is owed at the motion-to-dismiss stage than the letters that have been found to be confusing.

As Defendants point out, the Letter is very similar to the letter in *Zuniga*. (*See* doc. 14 at 8-9). *Zuniga* involved a letter that "plainly identified the entity to whom the debt was owed by using the words 'Current Creditor' right next to Bureaus Investment Group Portfolio No. 15 LLC." *Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9. The letter in *Zuniga* "also identified the original creditor with (not surprisingly) the phrase 'Original Creditor.'" *Id.* In its analysis, the *Zuniga* court stated that "there [were] no confusingly named non-creditors sprinkled about the letter to muddy the waters, and no opaque technical terms: the letter to Zuniga identified the 'original creditor' and the 'current creditor,' which is enough to make clear to whom the debt is currently owed." *Id.* at *10 (emphasis added). Thus, the *Zuniga* court found that "Zuniga . . . failed to state a claim for violation [of Section 1692g(a)(2)] of the FDCPA." *Id.* Here, similarly, the Letter identifies the current creditor, JH Portfolio, with the words "CURRENT CREDITOR" and the original creditor, Comenity Bank, with the words "ORIGINAL CREDITOR."

26

(Doc. 1-2 at 1). The Letter does not contain any "confusingly named non-creditors." The only non-creditor entity mentioned in the Letter is LTD, which is clearly identified as "a debt collector." (*Id.*) The Letter also does not contain any "opaque technical terms." (*See id.*) And, as discussed above, there is nothing else confusing about the Letter that makes its identification of JH Portfolio as the current creditor (and thus the creditor to whom the debt is owed) unclear. In fact, Plaintiff distinguishes *Zuniga* only by arguing that the letter in *Zuniga* "did not include the confusing statement that the collector had been retained by the above named creditor." (Doc. 19 at 13 n.4). Again, however, despite Plaintiff's statement to the contrary, the Letter never states that "[LTD] had been retained by the above named creditor." (*Id.*) Instead, the reference to the "above named creditor" merely describes which <u>account</u> was placed with LTD and thus does not create any confusion that detracts from the clarity resulting from JH Portfolio's being labeled as the current creditor and Comenity Bank's being labeled as the original creditor. Thus, the Letter's first sentence is not confusing. Because the Letter's first sentence is not confusing, the Letter is similar to the letter in *Zuniga* and thus also clearly states the name of the creditor to whom the debt is owed as required by Section 1692g(a)(2).

On the other hand, the Letter can be distinguished from the letters in the

cases in which the plaintiff's claim survived a motion to dismiss despite the letters explicitly identifying the "current creditor." The letters in these cases had additional confusing elements, namely the identification of a non-creditor client of the debt collector, that are not found in the Letter. *See Pardo*, 2015 U.S. Dist. LEXIS 125526, at *8-9; *Deschaine*, 2013 U.S. Dist. LEXIS 31349, at *4-5. Thus, Plaintiff's reliance on these cases is misplaced. Plaintiff primarily relies on *Pardo* for the proposition that explicitly identifying the "current creditor" is not sufficient and that a debt collection letter must also "include a description of the collecting entities' relationship." (Doc. 19 at 13). However, *Pardo* does not stand for this proposition. Instead, *Pardo* stands for the proposition that if a letter explicitly identifies a "current creditor" but then also identifies a different entity as the debt collector's "client" who is "willing to accept payment" without "any explanation of the . . . relationship" between the current creditor and that client, the plaintiff's claim is able to survive a motion to dismiss. *See Pardo*, 2015 U.S. Dist. LEXIS 125526, at *8-9. In fact, the *Pardo* court stated that if the letter had only identified the "Current Creditor," without also identifying the client who was "willing to accept pament," the court may have "indeed conclude[d] that as a matter of law the dunning letter was not confusing." *See id.* at *8. Thus, in *Pardo*, the reason that an explanation of the relationship between the parties was needed was because

another entity (the debt collector's client) was identified as an entity that was "willing to accept payment," and this created confusion as to the identity of the creditor to whom the debt was owed. *See id.* at *8-9. The Letter, however, does not identify any additional entity that is "willing to accept payment." (*See* doc. 1-2 at 1). Thus, the Letter's explicit identification of JH Portfolio as the current creditor without any explanation as to the relationship between the entities is sufficient.[7]

In addition to relying on cases like *Pardo* that involve letters that explicitly identify the "current creditor," Plaintiff also relies on cases that do not explicitly identify the "current creditor" in order to support her argument that the Letter did not sufficiently state the name of the creditor to whom the debt was owed. Plaintiff primarily relies on *Janetos*, 825 F.3d 317, using it to argue that she "has presented the exact type of collection letter that has been repeatedly held to state a claim for relief." (Doc. 19 at 9). *Janetos*, however, is clearly distinguishable, and the Letter

---

[7] Plaintiff also cites and mentions *Deschaine*, 2013 U.S. Dist. LEXIS 31349, which is a case similar to *Pardo*, but Plaintiff does not make any argument regarding *Deschaine*. (*See* doc. 19 at 7, 13). Still, however, the Court will address and distinguish *Deschaine*. Just like the letter in *Pardo*, the letter in *Deschaine* identified both a "Client" and a "Current Creditor." *See Deschaine*, 2013 U.S. Dist. LEXIS 31349, at *2, *4-5. The *Deschaine* court found that "[n]aming an entity as 'Client' and a different entity as 'Current Creditor' especially where the 'Client' is named more often than the 'Current Creditor' plausibly could create confusion." *Id.* at *4-5. Thus, again, just like *Pardo*, *Deschaine* is easily distinguishable because the confusion in the letter in *Deschaine* was caused by the identification of and multiple references to the debt collector's non-creditor client, *see id.*, neither of which occurred in the Letter. (*See* doc. 1-2 at 1).

is certainly not the "exact type" of letter as the letters in *Janetos*. The letters in

*Janetos*, unlike the Letter, did not "explicitly identify [the creditor to whom the

debt was owed, which was] Asset Acceptance[,] as the <u>current creditor</u>." *Janetos*,

825 F.3d at 319 (emphasis added). In fact, the letters in *Janetos* never even

identified Asset Acceptance as a creditor. *See id.* at 319-21. Instead, relevant to

this analysis, the letters in *Janetos* stated three facts regarding Asset Acceptance

and its relationship with the two other entities mentioned in the letters,

AMERISTAR and Fulton, Friedman & Gullace, LLP ("Fulton"): (1) that Asset

Acceptance was the "[a]ssignee of AMERISTAR"; (2) that the "above referenced

account [had] been transferred from Asset Acceptance, LLC to Fulton, Friedman

& Gullace, LLP"; and (3) that "if the consumer had 'already entered into a

payment plan or settlement arrangement with Asset Acceptance, LLC,' Fulton was

'committed to honoring the same,'" and that "consumers [should] direct all future

contact, including any questions they had, to Fulton's offices." *Id.* at 320. The

*Janetos* court found that the letters did not clearly state the name of the creditor to

whom the debt was owed because "Asset Acceptance was identified as the

'assignee' of another company, not as the current creditor or owner of the debt,"

and "each recipient was left to guess who owned the debt following the 'transfer'

of the 'account'" from Asset Acceptance, LLC, to Fulton. *Id.* at 321. The Letter,

however, unlike the letters in *Janetos*, clearly identifies JH Portfolio as the "current creditor," not as merely an "'assignee' of another company." (*See* doc. 1-2 at 1). Additionally, unlike the letters in *Janetos*, which stated that the account had been transferred to Fulton but never identified Fulton as a debt collector and thus possibly allowed an inference that Fulton was the creditor to whom the debt was owed, *see Janetos*, 825 F.3d at 320-21, the Letter clearly identifies LTD as "a debt collector" and states that the account "has been placed with . . . a debt collector" and thus does not allow the same inference. (*See* doc. 1-2 at 1). Because of these differences between the letters in *Janetos* and the Letter, the least sophisticated consumer here, unlike in *Janetos*, is not "left to guess who owned the debt" after the account was placed with LTD.[8] It is obvious that JH Portfolio, the current creditor, is the creditor who owns the debt and to whom the debt was owed.[9]

---

[8] Thus, regarding Plaintiff's argument that Plaintiff's ability to make a lucky guess that JH Portfolio is the creditor to whom the debt was owed does not render the Letter compliant with Section 1692g(a)(2) (*see* doc. 19 at 10, 14-15), the Court rejects the argument's premise. The least sophisticated consumer would not need to guess that JH Portfolio is the creditor to whom the debt was owed because the Letter clearly conveys that JH Portfolio is the creditor to whom the debt was owed.

[9] Besides *Janetos*, the other cases that Plaintiff uses to support her opposition to the Motion despite these cases involving letters that did not explicitly identify the current creditor are *Long*, 223 F. Supp. 3d 773, and *Walls v. United Collection Bureau, Inc.*, No. 11-6026, 2012 U.S. Dist. LEXIS 68079 (N.D. Ill. May 16, 2012). (*See* doc. 19 at 7, 12-14). The Court has already addressed and rejected Plaintiff's argument based on *Long*. *See supra*. Plaintiff cites and mentions *Walls*, but Plaintiff does not make any argument based on *Walls* except for stating that

Thus, the Letter is much more similar to the debt collection letters in cases such as *Zuniga*, in which the letters clearly conveyed the name of the creditor to whom the debt was owed, than the debt collection letters in cases such as *Pardo* and *Janetos*, in which the letters did not clearly convey the name of the creditor to whom the debt was owed. This supports the Court's analysis of the Letter and its finding that the Letter clearly conveys to the least sophisticated consumer the name of the creditor to whom the debt was owed.

## V.    CONCLUSION

The facts of this case are simple. Plaintiff received a debt collection letter that clearly identified JH Portfolio as the current creditor. (*See* doc. 1-2 at 1). The

---

the *Walls* court "emphasized the importance of avoiding confusion in dunning letters." (*See* doc. 19 at 14). Still, however, the Court will address and distinguish *Walls*. In *Walls*, the letter identified the creditor to whom the debt was owed as the "Current Owner." *Walls*, 2012 U.S. Dist. LEXIS 68079, at *5. The *Walls* court found this identification insufficient because it thought that "a significant number of unsophisticated debtors might reasonably ask themselves" the following question: "Current owner of *what?*" *Id.* Furthermore, the *Walls* court found that identifying the "current owner of the debt" does not satisfy "the statute, which requires that the 'creditor to whom the debt is owed' be identified," because "an unsophisticated consumer likely does not ask himself, 'Who owns the debt?' or think about debt in terms of 'ownership.'" *Id.* Unlike the letter in *Walls*, however, the Letter does not identify JH Portfolio as the current owner. The Letter identifies JH Portfolio as the current creditor. Thus, upon receiving the Letter, the least sophisticated consumer would not ask herself, "Current owner of *what?*" or be confused as to why the debt is being discussed in terms of ownership. Furthermore, because Section 1692g(a) uses the phrases "the creditor to whom the debt is owed" and "the current creditor" synonymously, *see* 15 U.S.C. § 1692g(a), and because the phrase "current creditor," rather than "current owner," is more likely to alert a consumer that the identified entity is a creditor, identifying JH Portfolio as the "current creditor" complies with Section 1692g(a)(2) even though the *Walls* court found that identifying the creditor as the "current owner" does not.

32

only other entities mentioned in the letter were Comenity Bank, which was clearly identified as the original creditor, and LTD, which was clearly identified as a debt collector. (*See id.*) Plaintiff then brought suit against Defendants, claiming that the Letter "violates [Section] 1692g(a)(2) of the FDCPA because it failed to effectively identify the <u>current creditor</u> to whom the debt was owed." (*See* doc. 1 at 4, ¶ 16) (emphasis added) (citations omitted). As indicated by the Court's analysis and supported by the case law, however, the Letter clearly identifies JH Portfolio as the current creditor (and thus "the creditor to whom the debt is owed," 15 U.S.C. § 1692g(a)(2)) under the least-sophisticated-consumer standard. Of the three entities identified in the Letter, the current creditor is not the debt collector, LTD. The current creditor is also not the original creditor, Comenity Bank. The current creditor is the current creditor, JH Portfolio. While the Court recognizes that explicitly identifying the "current creditor" is not always sufficient to comply with Section 1692g(a)(2), nothing in the Letter obscures Defendants' clear identification of JH Portfolio as the current creditor and thus as the creditor to whom the debt was owed. Plaintiff's well-pleaded factual allegations do not "allow[] the [C]ourt to draw the reasonable inference that [Defendants] [are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

For the reasons stated above, the Motion is **GRANTED** and the case will be

**DISMISSED WITH PREJUDICE**. A separate final order will be entered.

**DONE** this the 13th day of September, 2018.

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge
